365 So.2d 530 (1978)
Glynn W. REYNOLDS, Plaintiff-Appellee,
v.
Margaret Susan Romero REYNOLDS, Defendant-Appellant.
No. 6715.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1978.
Rehearing Denied January 10, 1979.
Writ Granted February 23, 1979.
*531 J. Minos Simon, Lafayette, for defendant-appellant.
Gold, Little, Simon, Weems & Bruser, Charles S. Weems, III, Alexandria, for plaintiff-appellee.
Before GUIDRY, FORET and CUTRER, JJ.
GUIDRY, Judge.
This appeal presents the substantial issue, as between a husband and wife, now divorced, of the status (community or separate) of certain property, i. e., distributed and undistributed earnings from property subject to a testamentary trust in favor of the wife as income and principal beneficiary, where the wife did not execute an affidavit of paraphernality as required by LSA-C.C. Article 2386.[1]
The issue presented arises as a result of the following facts which are undisputed. The parties litigant were married to each other on July 9, 1966. On February 6, 1970 they were judicially separated and eventually *532 divorced. Mrs. Reynolds did not execute and record an affidavit of paraphernality pursuant to the provisions of LSA-C.C. Article 2386. The community of acquets and gains existing between plaintiff and defendant acquired property however, upon termination of the community, the bulk of the community estate was settled amicably. The only property, the status of which is disputed on appeal, are monies distributed to Mrs. Reynolds and monies accrued but undistributed to Mrs. Reynolds at the dissolution of the community, as a principal and income beneficiary under a testamentary trust established in the last will and testament of her grandmother, Mrs. Minnie Smith Sledge. The testamentary trust came into existence at the death of the settlor which occurred some nine years before the marriage of the Reynolds. Under the terms of the trust a large rice farm in Vermilion Parish, Louisiana, together with all improvements, equipment, etc., was bequeathed to C. H. Brookshire, as trustee, to hold the property in trust for the settlor's grandchildren, including Mrs. Reynolds, as principal and income beneficiaries, who were to share and participate in said property, pursuant to the trust, in equal proportions. It is undisputed that Mrs. Reynolds participation was to the extent of onefourth. The trust so created was to continue until such time as the youngest of the grandchildren living at the time of settlor's death attained the age of twenty-one years. At the termination of the trust the entire trust estate was to be delivered to the beneficiaries in equal proportions and in full ownership. During the duration of the trust the trustee was directed to pay to the beneficiaries monthly, or at such periodic intervals as the trustee might determine best in his discretion, such sums as might be necessary to permit the beneficiaries to properly maintain and educate themselves, including ordinary and usual luxuries, which the trustee, in his discretion, might deem proper and reasonable. During the period of the marriage Mrs. Reynolds received as distributed trust income the sum of $11,913.85. These funds were deposited in a checking account in the Kaplan State Bank, which account was exclusively controlled by Mrs. Reynolds. At trial the parties stipulated that from this account Mrs. Reynolds expended the sum of $9660.26 on items like clothes for herself and the children, household items etc. The record reflects that upon dissolution of the community a balance of $555.18 remained in this account and the balance in the account of C. H. Brookshire, Trustee, representing undistributed earnings, amounted to the sum of $11434.80.
In light of these facts the defendant, Mrs. Reynolds (now Mrs. Stewart), contends that the distributed trust income and her proportionate share of the undistributed trust income, constitutes separate property and she thus is entitled to judgment recognizing this to be the status of such property and restitution from the former community to the extent of $9660.26. On the other hand the plaintiff, Mr. Reynolds, contends that the distributed and undistributed income, constitutes "fruits" of the paraphernal property of his former wife which, absent execution and recordation of the LSA-C.C. Article 2386 affidavit, formed part of the community of acquets and gains which existed between the parties. Plaintiff thus contends that defendant's demand for restitution should be rejected and he should be awarded judgment against his former wife for one-half of the distributed trust income remaining on deposit, i. e., the sum of $277.59, and one-half of his former wife's proportionate share of the undistributed income, i. e., $1429.35.
The trial court concluded that both the distributed and undistributed trust income was the separate property of Mrs. Reynolds, reasoning as follows:
". . . The fact to keep in mind in this case is that the property that was the corpus of the trust was not Mrs. Margaret Romero Reynolds' property. Since she did not have this property there was no way for her paraphernal property to produce fruits which would become community property. The law states that the property belongs to the trustee. R.S. 9:1781 provides:

*533 `A trustee is a person to whom title to the trust property is transferred to be administered by him as a fiduciary.'

The instrument setting up the trust placed the title to the property in the trustee.

`I. I give and bequeath my farm property, comprising 640 acres, more or less, situated in the Parish of Vermillion (sic) Louisiana, together with all improvements, equipment, farm implements, and movable property situated therein, under (sic) C. H. Brookshire, a resident of the Parish of Vermillion, (sic) Louisiana, trustee, to have and to hold all of the said property in trust for my grandchildren . . . .'
Mrs. Margaret Romero Reynolds did not own the property therefore it could not be considered her separate and paraphernal property. She had no right to make demands of anything of the trustee, not even the monies that were deposited in her bank account. The trust provided that the trustee was to pay sums to Mrs. Reynolds but solely at his discretion and that `the discretion given to the trustee shall be absolute and not be subject to the questioned (sic) by any of the beneficiaries of the trust.' The trustee had the authority to sell the property. Actually the only property that Mrs. Reynolds received from this source during the community regime was the funds that were deposited in the bank. The funds were the property. The funds were not the fruits of her paraphernal property but were the property per se. There is no proof that the funds deposited in the bank bore any fruits whatever. Apparently no interest accrued on this account nor did it create any kind of revenue from any source or for any reason.
The Court is of the opinion also that Mrs. Margaret Romero had no interest in the account maintained by the trustee. The only time she was entitled to any of the funds from the trust were when the trustee, at his sole discretion, transferred funds to her. The funds in the bank account of the trustee belonged to the trustee and not to Mrs. Romero. They became hers when they were transferred from the trustee's bank account to her bank account. Even if it is considered that it was her separate property there is no proof that it produced any fruits. Only the fruits became community property. . . ."
Although concluding that the distributed income was Mrs. Reynolds' separate property the trial judge denied her claim for restitution assigning the following reason therefor:
". . . The Court is of the opinion that Mrs. Margaret Romero Reynolds is not entitled to be reimbursed for the funds that she claims that she spent for the benefit of the community. It is apparent that she spent these of her own free will and of her own desire to spend them and to benefit the recipient of her benevolence. Apparently they were gifts, or contributions or donations to the community without any expectation of anything in return. There is no proof that there was any enhancement to the community from her separate and paraphernal funds. . . ."
Defendant appealed and assigns as error the trial court's conclusion that she is not entitled to restitution of her separate property expended for the benefit of the community. Plaintiff has answered defendant's appeal assigning as error the trial court's determination as to the status of the property in question and its failure to award plaintiff the relief required by proper disposition of that issue.
We believe that our learned trial brother erred when he concluded that during the existence of the community the defendant, Mrs. Reynolds, was not vested with any interest in the property which formed the corpus of the "Minnie Smith Sledge Trust" and therefore, distributed and undistributed trust income "were not the fruits of her paraphernal property but were the property per se."
We acknowledge that under our trust law, as it exists now and as it existed when the instant trust came into being, *534 title to the trust corpus vested in the trustee. LSA-R.S. 9:1731 former 9:1792(16) and 9:1811. However, this vesting of title in the trustee was for the sole purpose of his faithfully administering the property for the benefit of the beneficiary heirs and did not, in our opinion, serve to exclude the immediate vesting of interest in the principal beneficiaries at the moment of the settlor's death. Mrs. Reynolds was both a principal and income beneficiary.
In Burglass v. United States, 76 F.Supp. 904 (E.D.La.1948) the court, in deciding that trust income paid to a beneficiary husband constituted fruits of the husband's separate property and thus formed part of the community existing between him and his wife, stated that ". . . the title or ownership of the property in trust . . . was vested in the heirs at the death of the father, subject only to the limited trust. . ." In affirming this decision on appeal the U.S. Fifth Circuit in United States v. Burglass, 172 F.2d 960, 963 (1949) stated:

"While the act states that a trust shall be created when a person, in compliance with the provisions of the act, transfers the legal title to property to a trustee in trust for the benefit of himself or a third person, the provision does not change the Louisiana law of inheritance; and, under that law, as stated by the court below, appellee and his coheirs became, by operation of law, the owners in indivision of a portion of the properties at the . . . instant of the death of the father. The interest inherited from the father was transmitted to them subject to the terms of the testamentary trust. . . ."
(Emphasis supplied)
We recognize that our brethren of the First Circuit in Dunham v. Dunham, 174 So.2d 898 (La.App. 1st Cir. 1965) expressed disagreement with these pronouncements, but we find such pronouncements to be persuasive, especially in light of our Supreme Court's decision in Succession of Stewart, 301 So.2d 872 (La. 1974).
In Stewart, supra, nullity of the testator's last will and testament, which created a testamentary trust in favor of certain nieces and nephews and their descendants was sought on the ground that the trust provisions contained a prohibited substitution. The trust there under attack came into existence upon the death of the settlor on January 11, 1956, several years prior to the adoption of the Louisiana Trust Code of 1964 and the amendment of LSA-C.C. Article 1520 which amendment (Act 45 of 1962) excepted substitutions permitted by the laws relating to trusts from the prohibition of that article. Specifically, the opponents contended that because title to the corpus vested in the trustees and then subsequently upon termination of the trust in the principal beneficiaries the will contained a prohibited substitution within the meaning of the provisions of LSA-C.C. Article 1520 in effect at the time of settlor's death. In rejecting this argument our Supreme Court stated:

"Applying the law as it existed at the time the present testament went into effect and the prior jurisprudence to the facts of this case, we conclude that the testament herein does not contain a prohibited substitution. The bequest to the trustees was not made to them as owners or as beneficiaries but rather `in trust' subject to the terms and conditions as therein set forth. The trustees were charged only with the administration of the property for the benefit of the beneficiaries pending its distribution to them. As previously noted, the settlor clearly and unmistakably bequeathed the property placed in trust to his nieces and nephews and their descendants. The trust was created with the immediate vesting of interest in the beneficiaries at the moment of the settlor's death. There is no double or successive vesting of interest here . . ."

Although the issue before the court in Stewart was different from that presented in the instant case, the resolution of the issue in Stewart, as it is at least in part in this case, was dependent upon when the interest of the beneficiary heir vests.
In passing we observe that our present trust code specifically provides that the interest *535 of a principal beneficiary is acquired immediately upon the creation of a trust, subject only to certain exceptions not applicable to the trust under consideration (LSA-R.S. 9:1971) and that upon a principal beneficiary's death his interest vests in his heirs or legatees, subject to the trust. (LSA-R.S. 9:1972) Although Louisiana's Trust Act of 1938 contained no provision specifically providing that the interest of a principal beneficiary vested immediately upon creation of the trust, it did specifically provide for the vesting of a beneficiary's interest in his heirs or legatees at his death, subject to the trust. (See former LSA-R.S. 9:1921) We consider the above indicative that our present trust code specifically recognizes and our former trust law recognized, at least by implication, that in testamentary trusts the doctrine "le mort saisit le vif" applies in the same manner in which it would if there were no trust.
We are aware that our decision in this case presents a seeming conflict with our prior decision in Succession of Hines, 341 So.2d 42 (La.App. 3rd Cir. 1976). We discern no real conflict in the two cases. In Hines, supra, we correctly concluded that property bequeathed in trust was bequeathed to the trustee to be administered by him as a fiduciary for the benefit of the principal beneficiary and thus the trustee and not the principal beneficiary was alone empowered to demand delivery of the legacy bequeathed to the trust estate. LSA-R.S. 9:1731; 1781; and, LSA-C.C.P. Articles 699 and 742. We did not decide in Hines that the beneficiary heir was not vested with any interest in the trust corpus for such conclusion would be clearly contrary to LSA-R.S. 9:1971 and 1972.
In sum we conclude that Succession of Stewart, supra, is decisive of the issue presented and accordingly we hold that on the date of defendant's marriage to plaintiff she was, as a principal beneficiary under the Minnie Smith Sledge Trust, vested with an interest in the corpus held in trust, which interest formed part of her separate estate. LSA-C.C. Article 2334. The record clearly reflects that the distributed and undistributed income in question represents income derived by the trustee from farming and other operations conducted on the property held in trust. Therefore, this being so, it necessarily follows that the distributed income constitutes "fruits" of the paraphernal property of the wife within the intendment and meaning of LSA-C.C. Article 2386. We also conclude that, under the facts of this case, the undistributed income earned during the existence of the community constitutes "fruits" of the paraphernal property of the wife because onefourth of such income was certain to be received by Mrs. Reynolds either in distributions to her as income beneficiary or as principal beneficiary at the termination of the trust.
Considering the above, the sole remaining inquiry concerns the classification of the "profits" or "fruits" of the paraphernal property of the wife as community or separate pursuant to the provisions of LSA-C.C. Articles 2386[2] and 2402.[3] In Guilott v. Guilott, 326 So.2d 551 (La.App. 3rd Cir. 1976) writs refused, we considered the effect of the change in Article 2386 brought about by La.Acts, 1944, No. 286. Therein we stated:
"Prior to August 1, 1944, LSA-C.C. Art. 2386 provided as follows:

`When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or *536 the result of labor, belong to the conjugal partnership, if there exists a community of gains. If there do not, each party enjoys, as he chooses, that which comes to his hands; but the fruits and revenues, which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.'

By Act No. 286 of 1944, effective August 1, 1944, this article was amended to read as follows:
`The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.'
The 1944 amendment provided a definite manner in which the wife might retain the separate administration of her property, and thus claim the revenues therefrom as her separate property. The amendment did not give the wife any new rights, but provided an irrefutable and conclusive manner for the wife to establish the separate administration of her property. Where formerly the wife, in order to establish her separate administration, was required to prove a negativethat is, that her property was not administered by her husband or that it was not administered by the husband and wife indifferently, now she may establish her separate administration simply by proof that she has executed and filed the written instrument provided for in the amended Article 2386. The method of proving or establishing the separate administration of the wife's property was the only change made by the 1944 amendment." (at pgs. 555-6)
Although Art. 2402, which has remained unchanged since 1825, appears to require an evidentiary showing that the husband has had the administration and enjoyment either "of right or in fact" of his wife's separate effects before the profits thereof will be declared community property, whatever proof is required under that article is determined by the wife's action or inaction under Art. 2386 as amended. That is to say, if the wife files an affidavit of paraphernality, she is conclusively presumed to be administering her separate effects, and the profits will not enter the community. On the other hand, if the wife fails to file such an affidavit, then the husband is conclusively presumed to have the "administration and enjoyment" of his wife's separate effects, and the profits thereof belong to the community.
Counsel for appellee contends that Dunham v. Dunham, 174 So.2d 898 (La.App. 1st Cir. 1965) fully supports the trial court's conclusion as to the separate nature of the distributed and undistributed trust earnings in that according to the cited case, before the profits of a marital partner's separate effects can be classified as community property it must be established that the husband has had the administration "of right or in fact" of those separate effects. Accordingly, counsel for appellee argues that since neither plaintiff nor defendant had the administration and enjoyment of the corpus held in trust (such being vested exclusively in the trustee) the profits thereof did not fall into the community.
In Dunham the court determined that the husband, a principal beneficiary of property held in trust, did not have the administration "of right or in fact" of the *537 trust corpus or its fruits (this right being in the trustee alone) and that consequently the profits or fruits of this separate trust interest remained separate property. We find ourselves in disagreement with our brethren of the First Circuit. First, we do not interpret the phraseology of Article 2402 to require the administration and enjoyment by the husband of his own separate effects before the profits thereof fall into the community. Rather we interpret such provisions as having reference only to the separate effects of the wife of which the husband has the administration and enjoyment. In our view, the profits of the husband's separate effects, however administered, fall into the community. Additionally, we believe that such proof as is required under Article 2402 (insofar as the "administration and enjoyment" of the wife's separate effects by the husband are concerned) is controlled by the provisions of Article 2386 and the wife's action or inaction pursuant thereto.[4] In the instant case, since the defendant wife failed to execute the LSA-C.C. Art. 2386 affidavit, her husband is conclusively presumed to have had the administration of her separate effects, and no further inquiry under LSA-C.C. Art. 2402 is either required or necessary.
In the recent case of Guilott v. Guilott, 361 So.2d 1271 (La.App. 3rd Cir. 1978), our docket No. 6494, our court was faced with a situation in which a wife was receiving income from her interest in a partnership in commendam in which neither spouse had an administrative function of right or in fact. We concluded that absent the filing of an affidavit of intent by the wife as provided for in Art. 2386, the fruits or income from the partnership entered the community, without regard to who was managing the partnership. We herein conclude that the position taken in Guilott is consistent with the legislative intent behind the amendment of LSA-C.C. Art. 2386.
There is no dispute that Mrs. Reynolds did not file an authentic act in which she reserved the exclusive use and administration of her paraphernal effects and the profits thereof. We therefore find that all trust income which was generated during her marriage to appellee, whether it was distributed to her or not, was community property. As such, she is not entitled to restitution for any part of such income allegedly expended for community purposes, (Guilott v. Guilott, 326 So.2d 551 (La.App. 3rd Cir. 1976), writ refused) and the plaintiff, Mr. Reynolds, is entitled to judgment against the defendant for one-half of the distributed and undistributed trust profits unexpended on the date on which the community was dissolved as prayed for by him, i. e., the sum of $1,706.94.
For the above and foregoing reasons, we amend the trial court judgment and render judgment in favor of plaintiff, Glynn W. Reynolds, and against the defendant, Margaret Susan Romero Reynolds (now Stewart) in the full sum of $1,706.94, together with legal interest thereon from the date of judicial demand until paid. In all other respects the judgment appealed from is affirmed at appellant's costs.
AMENDED AND AFFIRMED.
NOTES
[1] The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.

If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.
[2] LSA-C.C. Art. 2386 provides in pertinent part:

"The fruits of the paraphernal property of the wife, wherever the property be located and however administered . . . fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone . . ."
[3] LSA-C.C. Art. 2402 provides in pertinent part:

"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact . . ."
[4] For a more comprehensive criticism of this decision and its effect as an obstacle to the integration of trust law with Louisiana property law concepts see, Pascal, Work of the Louisiana Appellate Courts for the 1965-66 term, 26 La.L.R. 459, at 483.