FOURNET, Justice.
 

 George B. Riviere, after he was sued for a separation of property by his wife, Mrs. Coralie Betz Riviere, instituted proceedings against her for separation from bed and board on the ground of abandonment and he is appealing from the judgment of the district court in so far as it decrees certain property acquired by his wife during the existence of the community to be her separate property.
 

 The two cases were consolidated for trial on the joint motion of both parties and the trial judge, in a well considered written opinion, gives us an accurate statement of the facts of the case and the issues involved and disposes of them as follows:
 

 “The evidence as to the abandonment is sufficient and entitles George B. Riviere to a judgment of separation from bed and board from his wife, Coralie Betz Riviere.
 

 “The principal contention between the parties and upon which the evidence was taken, is the status of the property. Mrs. Coralie Betz Riviere contends that most of the property is her own property purchased with her own separate funds or inherited by her from her parents, John N. Betz and wife; and Geoge B. Riviere, her husband, claims that all the property is community property.
 

 “The Rivieres were married on the 19th day of February, 1913, at which time George B. Riviere was delivering mail for the U. S. Government, with horse and buggy, and his salary was $97 per month. A couple of years after they were married, George B. Riviere was elected constable of the Parish of Jefferson at a salary of $100 per month, and his salary was later reduced to $75 per month, and then for a number of years it was reduced to $50 per month. Mrs. Riviere began working shortly after marriage and worked continuously up until 1942. Her salary during most of the time averaged $120 per month.
 

 “In 1920 Mrs. Riviere engaged in the millinery business with Miss Gabriel. This business continued for some time, but whatever profits were made by Mrs. Riviere went towards the maintenance of herself and her husband. Mr. Riviere, during the entire twenty-one years that he was constable, gave to his wife exactly $200, one hundred dollars on July 8, 1925, and one hundred dollars on August 13, 1924. He gave her an entire year’s salary amounting to $600 in 1942, but this money was expended by her with an additional $200 * * * to take Mr. Riviere to the Mayo Clinic for treatment. She secured $800 in travelers checks and paid for the trip and clinic charges.
 

 “Later, Mr. and Mrs. Riviere with a third person, formed a corporation to engage in a millinery business named ‘Riviere, Inc.’ This business was fairly successful.
 
 *50
 
 until a disastrous fire to their stock, which was under-insured, resulted in a loss of $6,500. In order to pay the loss of the company, Mrs. Riviere mortgaged a piece of property which she had received from her father, John Betz, and which property will be later dealt with by the Court.
 

 “Mrs. Riviere opened a bank account in December, 1933 with a deposit of $125, and on January 1, 1936, had a balance of $125. George B. Riviere opened a bank account January 28, 1935, in his own name, with a deposit of $200, so that in 1936, out of the various transactions heretofore referred to, including salary of both Mr. Riviere and Mrs. Riviere, they together had $325 in cash.
 

 “In July, 1913, Mr. and Mrs. Riviere purchased a lot on the corner of Grenadine Street and Lake Avenue, in the Metairie section, and the building thereon was used as their home. For the original payment of this property Mrs. Riviere secured from her father, John Betz, $1000, and George Riviere secured from his father $1,000. A mortgage was given for the remainder of the purchase price which was eventually paid off out of the earnings of the husband and wife. Later all of this property was sold except 40 feet of the land in the rear. Ten feet adjoining this 40 foot tract was purchased for $50 from the father of George Riviere, and with the money, in excess of the mortgages, received from the property located at the corner of Lake Avenue and Grenadine Street and the property Lots 27 and 28 Freidrichs Avenue, a home was erected on this 50 foot tract. This home bears the number 212 Grenadine Street, and both plaintiff and defendant admit that this lot and the building thereon belonged to the community of acquets and gains existing between them.
 

 “From the time that Mrs. Riviere opened her bank account and the time George B. Riviere opened his bank account, the plaintiff and defendant operated as though legally separated in property. Mr. Riviere deposited his salary checks to his own personal account, and also deposited to his personal account $7,000 which he received from the sale of property given to him by his father. Mrs. Riviere defrayed all of the expenses of the home out of her salary check to which she sometimes had to add money received' by her from rents and revenue of her property.
 

 “Mrs. Riviere retained the full administration of her separate property, paid all insurance and taxes, and attended to the renting and repairing of them.
 

 “John N. Betz, father of Mrs. Riviere, gave to her in the form of an act of sale for the sum of $250, a piece of property forming the corner of Rose Avenue and Metairie Road in the Metairie Road section of Jefferson Parish. John N. Betz, owner of a large tract of land in that vicinity, had nine children, and at the same time that he passed this conveyance to his daughter, Coralie Betz Riviere, he also, before the same notary public and on the same
 
 *52
 
 day, transferred a like piece of property to each of his other children. Each act recites that the purchase price was $250, and in each act the father reserved the usufruct for life.
 

 “Two years after Mrs. Riviere received her piece of property, which was in the form of an Act of Sale, she was offered $10,500 for it. Recently she was offered $15,000 for the front part of this identical property.
 

 “Mrs. Riviere testified she paid no money to her father for this property, and Mr. Riviere testified he paid no money for it. The court is satisfied that this property was donated to Mrs. Coralie Betz Riviere by her father, John N. Betz, although put in the form of an Act of Sale, and that this property with the buildings thereon is the separate property of Mrs. Coralie Betz Riviere.
 

 “After her father’s death, Mrs. Riviere with part of the funds received from her father’s estate, built a fruit stand on the front portion of this property and rented it for $25 a month for a while, and later for as much as $100 per month after an addition was made.
 

 “With the aid of a homestead mortgage, she erected a building on the rear of said property, which is designated as 120 Rose Avenue. There remains unpaid on this mortgage approximately the sum of $900, the balance having been paid by Mrs.Riviere in monthly payments out of the rents received from this building. This amount, Mrs. Riviere says, she is ready and willing to pay now.
 

 “Counsel for George Riviere, in. his brief, for the first time, raises the proposition that since the act from John N. Betz to Mrs. Coralie Betz Riv'iere of the-property, Lot 2 of Square 1, corner Rose Avenue and Metairie Road contains the reservation of the usufruct for life of the-donor, John N. Betz, that his donation is. null and void. This court having concluded that the act of conveyance was in fact a donation and not an act of sale must hold that George Riviere is without interest to-inquire into the validity of the act of conveyance; besides the validit)^ of this act because of the reservation of the usufruct by the donor was not raised in the pleadings and the court cannot pass upon the question of whether or not the retention of usufruct nullifies the act as a donation. Whenever this question is raised by a party in interest, the court will pass upon it. However, the court might say in passing, when the Betz Realty was formed, the widow of John N. Betz and his nine children conveyed by act of sale all of the property inherited from John N. Betz to the Betz Realty Company, and they included in this act the same nine lots of ground which had been donated to the heirs by the father in the form of acts of sale. Subsequently, the Betz Realty Company quitclaimed its interest in these lots to the various heirs including Mrs. Coralie Betz Riviere. This was, in effect, a partition by the heirs of
 
 *54
 
 these lots as each received the lot originally donated to him by John N. Betz. Betz Realty Company was a family holding company, no other person owned stock in the corporation after the death of Mrs. John N. Betz except the heirs of John N. Betz and each of the nine heirs was a member of the Board of Directors which adopted the resolution authorizing the execution of the quitclaim deed.
 

 “The court cannot maintain the act from John N. Betz to Coralie Betz Riviere as an act of sale since there was no consideration for the sale as testified to by both Mr. and Mrs. Riviere, and must conclude that it was a donation in disguise.
 

 “After the death of John N. Betz in 1927, his widow in community and nine children formed the Betz Realty Company. They transferred to the company the realty inherited from their father, John N. Betz. Mrs. John N. Betz died in 1931 and her children inherited her stock in the Betz Realty Company in equal proportions. Various tracts were sold from time to time by the Betz Realty Company out of the large tract owned by them, and the last large tract was sold in 1936 to the Iberville Realty Company for $67,000. The Betz Realty Company still owned 9 lots of ground in Rose Place, a subdivision which had been created by their father out of part of his property. When the nine children who were the sole owners of stock in Betz Realty Company, drew lots from a hat for the distribution among them of the nine remaining lots, Mrs. Riviere drew Lot #23 in Rose Place, and the title was executed to her in the form of an act of sale in which it is recited that she purchased with her own separate and paraphernal funds. A like act was made to each of the other heirs. When in 1936 the Betz Realty Company sold for $67,000 this tract of land to the Iberville Realty Company, Betz Realty Company made a distribution to the stockholders, and Mrs. Coralie Betz Riviere received $6,637 as her portion. This money was deposited by her in her checking account and immediately disposed of as follows : She paid on account of the mortgage executed by her to pay off the debts of Riviere, Inc. $3,500. The remaining $3,000 was withdrawn by check and placed by her in her safe deposit box in the Broad Street Branch of the Whitney National Bank.
 

 “With $1,500 of the $3,000 placed in her safe deposit box from the money received from Betz Realty Company from sale to Iberville Realty Company, Mrs. Riviere purchased Lots 'C and ‘D’ in Pailet Place. Later, she used the remaining $1,500 plus $3,000 she borrowed from her husband out of his paraphernal funds and erected a building on these lots. This building on part of Lots ‘C’ and ‘D’ was sold by Mrs. Riviere on December 5, 1940, for $7,500, and she repaid her husband out of the proceeds, $2,000 of the money she borrowed from him. This left her owing him $1,000, which she admits she still owes him.
 

 
 *56
 
 “The court has concluded that Mrs. Riviere borrowed this money from Mr. Riviere as she testified, because George Riviere testified that he paid certain bills amounting to about $3,000 on the property at 505 Rose Avenue, and Mrs. Riviere testified that the loan was made by her from her husband as follows: She intended to make a homestead loan and her husband stated that he had money and would lend her $3,000. She agreed to the loan from her husband, and instead of handing her the cash she made out checks for Mr. Riviere on his own bank account for about $3,000 to pay bills on the ‘C’ and ‘D’ Pailet Place building.
 

 “Mrs. Riviere is corroborated by the bills offered in evidence on the Pailet Place property corresponding to the cent with checks issued by George Riviere during 1940.
 

 “Since the Pailet Place property was erected in 1940, and the bills which were paid by Mr. George Riviere were paid in 1940, the court is of the opinion that Mrs. Riviere is correct in her testimony that she borrowed $3,000 — approximately the amount of checks issued by George Riviere in payment for bills on the Pailet Place property, and not on 505 Rose Avenue, which was not erected until late 1941. Besides, Mrs. Riviere testified — and George Riviere denied — that she repaid her husband $2,000 of the amount which she had borrowed on January 23, 1941, and still owes him the sum of $1,000. Mrs. Riviere’s testimony is corroborated by the bank accounts of George Riviere which show he deposited in his checking account on January 24, 1941, the sum of $1,000, and in his savings account on the same date the sum of $1,000. These deposits representing $2,000 on the day after Mrs. Riviere testified she paid her husband $2,000 on account of the $3,000 loan are not otherwise accounted for by George Riviere. The building erected at 505 Rose Avenue on which George Riviere claims to have paid out about $3,000 in bills was not begun until September 1941, and an inspection of George Riviere’s checking account does not show withdrawals during the period of construction of the building at 505 Rose corresponding with the bills incurred in the construction of 505 Rose Avenue; these bills are all in evidence.
 

 “The $3,000 which Mr. Riviere loaned to his wife was from money received by him from the sale of property which his father donated to him in the form of an act of sale. Although the donation was in the form of an act of sale, George Riviere’s answer to the suit for separation of property brought by Mrs. Riviere specifically states that these funds are his own separate and paraphernal funds. Mrs. Riviere does not deny that these were his paraphernal funds, even though the donation was in the form of an act of sale.
 

 “In December, 1940, Mrs. Riviere sold a portion of lots ‘C’ and ‘D’ in Pailet Place upon which she had constructed the build
 
 *58
 
 ing heretofore described, to the Citizens’ Homestead Association for $7,500. Out of this amount she paid $2,000 to her husband on account of the $3,000 she borrowed for the construction of the building on the Pailet Place property, and with the balance of the money which had been placed in her safe deposit box and withdrawn as bills came due, she constructed the building known as 505 Rose Avenue.
 

 “On January 7, 1942, Mr. and Mrs. George Riviere purchased the property at 2316 Metairie Road, together with the building thereon, $300 being paid in cash and the balance represented by a homestead mortgage. The evidence as to the source of the original payment of $300 in cash is not sufficient in the opinion of the Court to sustain the contention that this is the separate property of Mrs. Riviere, and it therefore holds that it belongs to the community.
 

 “On January 11, 1928, Mrs. Coralie Betz Riviere, authorized by her husband, purchased ten unimproved lots of ground in Kenner. The purchase price was $980. Mrs. Riviere testified that she made the original payment of $280 on these lots from her own separate funds realized from the rental of her separate property. However, she states that the $700 represented by the mortgage was paid by her out of her salary, and the court holds that this property belongs to the community.
 

 “In April, 1940, Mrs. Riviere purchased from her sister, Mrs. Elizabeth Betz Castelle, Lot No. 18 on Rose Avenue. The act recites that Mrs. Betz purchased with her own separate and paraphernal funds. Mrs. Riviere testified that the purchase price was paid by her out of her separate and paraphernal funds. Mr. Riviere does not even appear in the act of sale, and does not testify in contradiction to Mrs. Riviere. The court holds that this is the separate property of Mrs. Riviere.
 

 “Mrs. Riviere testified that she received from the succession of her father, John N. Betz, approximately $15,000. This is substantiated by the fact that the inventory in the succession of her father, John N. Betz, shows a valuation of $132,000 and there were nine children. It is common knowledge that the property in Metairie section of Jefferson Parish improved in value very rapidly in the last twenty years and the value of the land left by John N. Betz increased accordingly.
 

 “Also, from time to time she received money from her mother during her lifetime, and dividend checks from Betz Realty. Checks corroborating her testimony are in evidence.
 

 “Mrs. Riviere testified that the contents of the building 505 Rose Avenue were paid for by her out of the moneys received from time to time from the family holding company, Betz Realty Co., Inc., but she does not identify and trace these funds with sufficient certainty, and the court therefore holds that the contents of the
 
 *60
 
 building at 505 Rose Avenue are community property. Mrs. Riviere testified that she purchased the contents of the building at 120 Rose Avenue with money secured by her by a loan from her sister, Mrs. Ida Hornaday; that she is repaying this money to her sister at the rate of $25 per month out of the increased rental she receives from this property as a furnished building, and the court holds that the contents of the premises at 120 Rose Avenue are the separate property of Mrs. Riviere. The source of the money which was used in purchasing the furnishings of the premises 2316 Metairie Road is not made sufficiently certain by Mrs. Riviere, and since the burden is upon her to sustain her claim that this is her separate property and she has failed to carry the burden, the court holds that the contents of the premises 2316 Metairie Road are community property.
 

 “As to the automobile in contest, Mrs. Riviere testified that she changed in a car which had previously been purchased and paid the remaining cash portion of the purchase price with money borrowed from her sister. With money realized from the sale of Lot No. 7 and parts of 6 and 8 on Freidrichs Avenue, which was concededly community property, she repaid her sister. The court holds then that the automobile belongs to the community.”
 

 Although a major portion of the appellant’s 78 page brief is devoted to a rehash of the evidence touching on all of the properties involved and Mrs. Riviere’s various transactions with respect to them, our appreciation of the evidence supports the trial judge’s findings of fact and conclusions with respect thereto and no useful purpose could here be served in going again over the same.
 

 We find no merit to counsel’s renewal of the attack made in the lower court with respect-to the nullity of the transfer of the property at Rose Avenue and Metairie Road by John Betz to his daughter, for even if this donation were held to be a nullity because of the reservation therein of the usufruct by the donor, as found by the trial judge, this would avail Mr. Riviere nothing because in that event the property would revert to the estate of the donor, in which Mr. Riviere has no interest.
 

 Likewise, the appellant’s contention that the transfer of this property to the Jackson Homestead in 1938 and its retransfer to Mrs. Riviere and Mr, Riviere for the purpose of effecting a loan transferred the property to the community is without merit, for this identical issue was raised in the very recent case of Capillon v. Chambliss, La.Sup., 29 So.2d 171, and there decided adverse to Mr. Riviere’s contention. See, also, Mayre v. Pierson, 171 La. 1077, 133 So. 163, to. the same effect.
 

 The remainder of the appellant’s brief and argument is devoted to the development of the proposition that all of the property in Mrs. Riviere’s name is community property for the reason that she made community income tax returns to the federal govern
 
 *62
 
 ment, he signed and became liable on mortgages affecting this supposedly separate property, and also for the additional reason that the commingling of her separate funds with her salary and that of her husband and the revenues from the properties in her separate bank account worked such a metamorphosis that it converted all of these funds into community funds, citing Smith v. Brock, La.App., 200 So. 342 and Magnolia Petroleum Co. v. Crigler, La.App., 12 So.2d 511, as authority for this proposition.
 

 While it is true that the filing of community income tax returns may be used as evidence against the wife’s contention that property in her name is not her separate property, such evidence is not conclusive. Evidence of this character may be weighed against the wife when the evidence offered by her otherwise to establish the separate status of property is not satisfactory or there is some doubt as to its separate status. In this case, however, the paraphernality of the funds with which the property claimed by Mrs. Riviere was acquired has been established by an overwhelming preponderance of the evidence.
 

 The fact that the husband signed or endorsed notes and mortgages affecting the wife’s separate property does not have the effect of convérting the same into community property. This does not even affect the community in any way unless the community is called upon to pay some of the notes or to satisfy some of the mortgages, in which event the separate estate of the wife would be indebted to the community to that extent.
 

 While the expressions with reference to the commingling of community and separate funds relied on by the appellant are to be found in the opinions in the cases of Smith v. Brock and Magnolia Pelroleum Co. v. Crigler, supra, both decided by the Court of Appeal for the Second Circuit, a mere reading of these two cases will show that the statements are not only not supported by any authority, but were also unwarranted from the standpoint of the factual situations - in these cases. In both of them the court found as a fact that the evidence was neither satisfactory nor sufficient to establish the paraphernality of the funds with which the property in controversy was purchased.
 

 Under our -community system of law all property acquired by either spouse during the existence of the marriage is presumed to fall into the community of acquets and gains and to overcome this presumption the wife claiming the property in her own name to be her separate property must establish (1) the paraphernality of the funds used for the purchase; (2) her individual administration of the property; and (3) that the money was invested by her. In the event the purchase is made on credit, she has the further burden of establishing (4) that she not only made the down payment out of her separate and paraphernal funds, but that she
 
 *64
 
 had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; Succession of Burke, 107 La. 82, 31 So. 391; Fortier v. Barry, 111 La. 776, 35 So. 900; Houghton v. Hall, 177 La. 237, 148 So. 37 and Montgomery v. Bouanchaud, 179 La. 312, 315, 154 So. 8.
 

 Applying these rules to the evidence in this case, we think it clearly supports the conclusions of the trial judge as to Mrs. Riviere’s right to the property decreed to be her separate property.
 

 Aside from the contents of the property at 120 Rose Avenue, four tracts of real estate were held to be Mrs. Riviere’s separate property. Of these four tracts, two came to Mrs. Riviere from the estate of her father and mother, i. e., the property at Metairie Road and Rose Avenue and Lot 23 on Rose Avenue. In the deed to Lot 18 on Rose Avenue it is stated Mrs. Riviere purchased the same out of funds derived from the sale of property inherited from her father and this is not contradicted by her husband. The other tract, consisting of the lots on Pailet Place, was purchased with funds traced to money secured from the estate of Mrs. Riviere’s father and kept by her in a safety deposit box, not in her checking account. It is obvious, therefore, that only one piece of separate property might have been paid for out of the funds of the wife in her separate checking account, i. e., the Lot 18 on Rose Avenue, and this her husband, by not contradicting her statements that this was purchased by her separate funds, tacitly admits is her separate property.
 

 The appellee is asking us in brief and argument to again consider the status of the property at 2316 Metairie Road held by the trial judge to belong to the community. Tire appellee having failed to appeal from the judgment or to answer the appellant’s appeal, those portions of the judgment adverse to her are final and cannot be reviewed here.
 

 For the reasons assigned the judgment appealed from is affirmed.