MILLER, Judge.
The husband contends that certain property acquired by his wife during their marriage is community property. The trial court found it to be the wife’s separate property and we reverse.
Plaintiff Emma Comeaux filed this “suit for declaratory judgment” to declare a 57l/¿ by 154 feet lot located in Abbeville to be her separate property. The parties were married on August 31, 1957, judicially separated on June 29, 1967 and divorced on September 9, 1968.
On October 29, 1963, by authentic act styled a “Cash Deed”, Ozine Broussard and her husband Theonice Comeaux, the parents of plaintiff Emma Comeaux, conveyed the property to “Emma Comeaux, married to and living with Walter Noel”. There was no declaration that the purchase was made with separate funds. The deed was not signed by plaintiff Comeaux or defendant Noel. The recited consideration was $1,000.
“ * * * for which amount vendors herein accept as payment for property herein conveyed a promissory note made payable to Emma Comeaux and signed by Ozite Broussard and Theonice Co-meaux in the sum of $1,000.00 dated October 1, 1958 bearing interest at 6% from date until paid. This promissory note being marked paid in presence of undersigned Notary by Emma Comeaux and delivered to vendors herein as full payment for property herein conveyed.”
There is no contention that the property is worth more than $1,000.00.
Defendant appellant made timely objections to the parole evidence offered to vary the terms of the authentic act. The trial court cited Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947) and ruled that the wife was entitled to contest the facts recited in the authentic act and that she did prove that the parties intended the “Cash Deed” to be a donation rather than a cash sale. The property was therefore declared to be the wife’s separate property.
Plaintiff appellee contended that she did not pay for the property and therefore concedes that payment was not made from her separate and paraphernal estate. If the property was sold to her, it falls into the community of acquets and gains. LSA-C.C. Art. 2402. If the property was donated to her, it is her separate and para-phernal property. LSA-C.C. Art. 2334.
The wife argues that a cash deed can be reformed. But this is not before us because this is not a suit to reform the cash deed. If it were, this authentic act would not stand as a donation because the wife did not accept the donation as required by LSA-C.C. Arts. 1540 et seq.
*96 We pretermit discussion of appellant’s argument that the trial court should have sustained his objections to the parol evidence which sought to vary the terms of the authentic act. LSA-C.C. Arts. 2236, 2237, 2276, 2287. Templet v. Babbitt, 198 La. 810, 5 So.2d 13 (1941); Robinson v. Britton, 137 La. 863, 69 So. 282 (1915).
To prove that the Cash Deed was a donation, the wife offered her own testimony, her father’s testimony and the Notary’s testimony.
The record suggests that the property was Mrs. Comeaux’s mother’s separate property and that Mrs. Comeaux’s mother died September 13, 1969, some ten months after this suit was filed, and approximately six years after the Cash Deed was executed and recorded.
Mrs. Comeaux’s father testified that he and his wife transferred the property to his daughter so that they could get on the Old Age Welfare program. Tr. 70. This was to some extent verified by plaintiff’s testimony at Tr. 38-40. Mr. Comeaux testified that his wife discussed the problem of transferring this property with the Notary Public the day before the instrument was signed; that Mr. Comeaux was present only on the day the instrument was signed; that on the day the instrument was signed, he told the notary that they were giving the property to plaintiff “ * * * because she had tend to us in the past and we was figuring on her to take care of us later on * * Tr. 66, 68, 69. Plaintiff’s father admitted that plaintiff had helped to pay one of her mother’s hospital bills, but denied owing his daughter any money. Specifically, he denied that they had ever given their daughter a note to support any indebtedness.
The Notary testified that he was told that Mr. and Mrs. Comeaux wanted to “give Emma some property, and they wanted me to pass the donation.” After some discussion, he learned that “they wanted to give that to Emma for the reason that Emma had been good to them, and that she had advanced them money * * * ” Tr. 78, 79, 86, 89. He asked what they thought they owed Emma and they estimated that they owed her a thousand dollars. Tr. 79. He explained to them that on those facts, it would be better to make a Cash Deed. He specifically asked them if their other child (a son) understood that “You are actually giving this to Emma for what you owe her.” Tr. 82. They answered that he understood and had no objection.
The Notary gave a statement which was filed in evidence in which he recited that plaintiff spoke to him about a month before the sale; that she mentioned that her daddy and mother wanted to deed some property to her for some money that she had advanced to them for doctor bills and other expenses; and that she estimated that her parents owed her about $1,000. At that time he suggested that a sale would be better than a donation. Tr. 93.
Plaintiff testified that she has always looked after her father and mother, but that she never gave them any money. Tr. 30, 31. She indicated that she always did the shopping for her mother and father. When asked why her mother transferred this property, she answered:
“Well, because I’ve always helped and looked after them, and she wanted to give me this land. I talked to my brother about it and my brother said, ‘You always take care of mother and daddy and you always look after them, I think it is all right that it’s done that way.’ I — but I did not buy the land. That is just a mistake. What is on this paper here is just a mistake.” Tr. 38.
At Tr. 45 plaintiff testified that her mother “wanted to give me these lots for the past years that I’ve looked after them and helped them out, and she wanted me to have this.”
Plaintiff admitted that if the Welfare Department asked her, then she told them *97 that she owned the property and that she owned it by virtue of the deed of record. Tr. 40, 46.
The trial court properly found no support for the recitation in the deed that a $1,000 note was cancelled at the time the deed was passed. On the other hand, there is uniform agreement that plaintiff looked after and worked to help her parents for many years and that her parents intended to transfer this property to pay for these services. There was no challenge of the Notary’s testimony that plaintiff’s services and funds used to help her parents were valued at $1,000, and that plaintiff’s brother understood that she had earned this extra portion of her parents’ estate because she had always taken care of her parents.
We are left with the settled conviction that the Notary carefully informed plaintiff’s parents that they were deeding the property to their daughter in payment for past services and for monies expended by their daughter in their behalf and that he was not passing a donation. We therefore find manifest error in the declaration that the property was acquired by donation rather than by cash sale.
We distinguish the case of Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947). While the opinion states that the act of sale was a donation in disguise, the issue of varying the terms of an authentic act was not discussed. No authority was cited in support of the holding that the act of sale could be, in effect, reformed into a donation. The court acknowledged that if the act of sale was a donation, it would be null “because of the reservation therein of the usufruct by the donor.” 29 So.2d 465, 471. Nevertheless, this availed the husband nothing because in that event the property reverted to the estate of the donor and the husband would have no interest.
In Betz, both the husband and wife signed the act of sale. Both testified that the $250 recited consideration was not paid for property worth more than $10,000 within two years after the sale. In the instant case, neither the husband nor wife signed the act of sale. The wife and her father testified that the property was transferred to her in consideration of her services in caring for her parents. It was also acknowledged that she had paid at least one hospital bill for her mother. The mother lived some six years after the sale and ten months after this suit for declaratory judgment was filed. She did not seek to reform the Act of Sale, even though she was concerned about the possibility that her daughter’s husband might seek to have this property declared to be community property. Here the property conveyed was valued at $1,000 and the wife’s services were appraised at $1,000.
The trial court’s judgment is reversed and the property which is the subject of this litigation is declared to be community property. Costs of court both at trial and on appeal are assessed to plaintiff appellee.
Reversed and rendered.