326 So.2d 551 (1976)
Gloria Ann GUILOTT, Plaintiff-Appellee,
v.
Clyde E. GUILOTT, Defendant-Appellant.
No. 5109.
Court of Appeal of Louisiana, Third Circuit.
January 22, 1976.
Rehearing Denied March 4, 1976.
Writ Refused April 23, 1976.
*552 McLeod & Dow by William L. McLeod, Jr., Lake Charles, for defendant-appellant.
W. Ellis Bond, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, MILLER, DOMENGEAUX, WATSON and MORRIS, JJ.
MORRIS, Judge.
On October 30, 1972, the plaintiff-appellee, Gloria Ann Guilott, obtained a judgment in her favor against her husband, Clyde E. Guilott, Defendant-appellant, decreeing a separation from bed and board. No appeal was taken from this judgment. The petition in that suit was filed May 1, 1972, and, therefore, the community of acquets and gains existing between the parties was dissolved as of that date under the provisions of LSA-C.C. Art. 155, which makes the judgment of separation retroactive to the date on which the petition for same was filed.
The separation decree having become final, Mrs. Guilott on January 16, 1973 filed a suit for partition of the community of acquets and gains formerly existing with her husband. From a judgment ordering a partition of the community and restitution of certain paraphernal effects belonging to the plaintiff, and the fruits thereof, the defendant, Clyde E. Guilott, has appealed.
The record reveals that the parties were married in 1949 and were domiciled in Calcasieu Parish, Louisiana. In 1956 Mrs. Guilott received from her father, Robert Barber, an alleged donation consisting of an interest in the partnership, Barber Brothers Company of Baton Rouge, Louisiana, a construction firm. Over the years Mrs. Guilott received cash distributions from the partnership as follows:

 1957 - $ 13,459.12
 1958 - $ 12,500.00
 1959 - $ 28,642.47
 1960 - $ 17,105.78
 1961 - $ 15,036.12
 1962 - $ 30,935.61
 1963 - $ 7,644.44
 1964 - $ 536.62
 1965 - $ 2,021.16
 1966-1968 - $ 0
 1969 - $ 7,500.00[1]
 1970 - $ 33,342.90[1]
 Total - $168,724.22

In 1965 the partnership of Barber Brothers Company allegedly made an additional *553 cash distribution to the partners. With this cash distribution the partners, including Mrs. Guilott, purchased stock in a corporation, Barber Brothers Contracting Company, Inc. in a simultaneous transaction in the same proportions that the partnership was owned. However, the existence of the partnership continued until June 30, 1970. On January 31, 1969, Mrs. Guilott sold her stock back to the corporation for the sum of $156,243.76, of which amount the sum of $39,060.94 was paid at the time of the sale and the same amount paid on January 2, 1970, February 1, 1971 and on January 28, 1972. Besides the principal installments on the stock sale, Mrs. Guilott received $9,244.43 in interest on the credit portion of the sale, making a total of $165,488.19 received in principal and interest on the stock transaction.
Mrs. Guilott also claims in the proceeding restitution of direct donations made to her in 1961 and 1962 by her father, Robert Barber, in the total sum of $57,785.98, which she claims were used for the benefit of the community.
In summary, Mrs. Guilott claims the following paraphernal funds or fruits thereof, to-wit:

Cash distributions of partnership 1957-1970
 (above itemized) 168,724.22
Principal from sale of corporate stock 156,243.76
Interest on sale of corporate stock 9,244.43
Fair market value of municipal bonds 69,063.60
Direct donations from Robert Barber 57,785.98
 ___________
 Total $461,061.99

These separate funds and earnings thereof were deposited in various accounts maintained by Mrs. Guilott. At the trial counsel for the parties entered into the following stipulation:
"I'll [agreed to by both counsel] stipulate on behalf of the plaintiff that all the funds received by her (Mrs. Guilott) as her separate property were commingled and converted to community assets during the course of the marriage prior to its termination." Explanatory words in brackets supplied.

This stipulation has the effect of a judicial admission or confession and both the parties and the court are bound thereby. LSA-C.C. Art. 2291; Placid Oil Company v. A. M. Dupont Corporation, 244 La. 1075, 156 So.2d 444 (1963).
Based upon this stipulation and other evidence the trial court held that the following were community assets:
(1) The items listed in the inventory in this proceeding.
(2) The Ann Guilott Trust in the Lakeside National Bank, Account No. 1017.
(a) Balance as of May 1, 1972, $161,203.34;
(b) Accumulated interest, dividends and net gains therefrom from May 1, 1972, to January 17, 1974, $25,357.81.
(Counsel for both parties used the date of January 17, 1974, as the pertinent date for the calculation of increase in this account.)
(3) Promissory note of Richard T. Cooley for the sale of the Contraband Place property in the principal sum of May 1, 1972, of $12,893.43.
(4) The business known as AAA Drive-In Cleaners, (exclusive of the immovable property.)

*554 (5) The Clyde E. Guilott Trust in the Lakeside National Bank, Account No. 1074.
(a) Balance as of May 1, 1972, $30,780.45;
(b) Accumulated dividends, interest, and gains therefrom from May 1, 1972, until January 21, 1974, $2,644.27.
(Counsel for both parties used the date of January 17, 1974, as the pertinent date for the calculation of increase in this account.)
(6) Account of Ann Guilott in the McNeese Branch of the Lakeside National Bank, $12,216.16.
(7) Account of Ann Guilott in the Fidelity National Bank of Baton Rouge, Louisiana, in the sum of $2,772.93.
(8) The Life Insurance Company of Virginia Policy # 755590 on the life of Clyde Guilott, cash surrender value $820.72.
(9) The Life Insurance Company of Virginia policy # 754128 on the life of Clyde Guilott, cash surrender value $375.93.
(10) Cash surrender value of the Continental Service Insurance Company Policy on the life of Clyde Guilott (the amount of the cash surrender value was not furnished to the court.)
(11) Coin collection.
(12) Municipal bonds.[2]
(a) Iberia Parish Consolidated School District No. 13
(b) Calcasieu Parish Gravity Drainage District No. 4
(c) St. Bernard Parish School Board No. 1
(d) State of Louisiana, State Bond and Building Commission, Series AA
(13) The sum of $500.00 per month received as rent by Clyde Guilott from AAA Drive-In Cleaners for the rent of the community owned building on Prien Lake Road for the period from May 1, 1972, and continuing to the date of the partition of the community property.
The trial court then ordered that the community assets be partitioned by licitation, with the exception of those items that are cash assets, and any items other than cash items to be retained by the respective parties as debits against their community interest. The judgment also recognized the parties as owners of an undivided one-half interest each in and to the proceeds of a expropriation proceeding then pending.
The court then ordered the debiting of each parties' community interest with the assets of which each was in possession. Mrs. Guilott's community interest was debited with the following items:
(1) The Ann Guilott Trust in the Lakeside National Bank, Account No. 1017,
(a) Balance as of May 1, 1972, $161,203.34.
(b) Accumulated interest, dividends and net gains therefrom from May 1, 1972, to January 17, 1974, $25,357.81.
(2) Ann Guilott checking account in the McNeese Branch of the Lakeside National Bank, $12,216.16.
(3) The account of Ann Guilott in the Fidelity National Bank of Baton Rouge, Louisiana, $2,772.93.
(4) Proceeds derived from sale of Municipal Bonds of the Iberia Parish School District No. 13, and of the State of Louisiana, State Bond and Building Commission, Series AA, in the amount of $25,000.00.
*555 Mr. Guilott's community interest was debited with the following items in his possession:
(1) The Clyde Guilott Trust in the Lakeside National Bank, Account No. 1074.
(a) Balance as of May 1, 1972, $30,780.45.
(b) Accumulated interest, dividends and net gains therefrom from May 1, 1972, to January 17, 1974, $2,644.27.
(2) Cash surrender value of Life Insurance Company of Virginia Policy #755590, $820.72.
(3) Cash surrender value of the Continental Service Insurance Policy on the life of Clyde Guilott.
(4) Cash surrender value of Life Insurance Company of Virginia Policy #754128, $375.93.
(5) The sum of $500.00 per month received as rent by Clyde Guilott from AAA Drive-In Cleaners for the rent of the community owned building on Prien Lake Road for the period from May 1, 1972, and continuing to the date of the partition of the community property.
The trial court further ordered restitution by the husband of the entire amount of the wife's separate funds, and fruits therefrom, in the sum of $461,061.99[3] holding that both the paraphernal effects and the fruits thereof were subject to restitution, and that it was, therefore, unnecessary to attempt to make a distinction between principal amounts and the income thereof. We disagree.
Defendant-appellant's specification of errors is mainly directed at the restitution of separate funds of the wife, and the fruits thereof, ordered by the court. The only error complained of that does not relate to restitution is the claim of rent from Mrs. Guilott for her occupancy of the family community home from the date of filing the separation suit. The trial court was correct in disallowing this claim. The parties are owners in indivision of this property, and a co-owner out of possession does not have a right of action against his co-owner for the latter's personal occupancy, use and enjoyment of the common property, but enjoys only the remedy of partition to protect his interest. Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955).
In ordering restitution of the fruits of the separate property of the wife, the trial court relied upon the following statement made in Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957), to-wit:
"Under our law the wife, unlike the husband, has the absolute right to restitution for her paraphernal effects and their fruits, either delivered to her husband or delivered for use to the community, save in instances governed by Article 2389 of the Civil Code, which is not applicable here." (Emphasis Supplied) 99 So.2d at p. 360.
Although this broad statement would seem to be decisive on the question of restitution of fruits, it must be considered in the light of what was actually decided and the law in effect during the time that income was accruing to the separate estate.
Prior to August 1, 1944, LSA-C.C. Art. 2386 provided as follows:
"When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or *556 the result of labor, belong to the conjugal partnership, if there exists a community of gains. If there do not, each party enjoys, as he chooses, that which comes to his hands; but the fruits and revenues, which are existing at the dissolution of the marriage, belong to the owner of the things which produce them."
By Act No. 286 of 1944, effective August 1, 1944, this article was amended to read as follows:
"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
"If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them."
The 1944 amendment provided a definite manner in which the wife might retain the separate administration of her property, and thus claim the revenues therefrom as her separate property. The amendment did not give the wife any new rights, but provided an irrefutable and conclusive manner for the wife to establish the separate administration of her property. Where formerly the wife, in order to establish her separate administration, was required to prove a negativethat is, that her property was not administered by her husband or that it was not administered by the husband and wife indifferently, now she may establish her separate administration simply by proof that she has executed and filed the written instrument provided for in the amended Article 2386. The method of proving or establishing the separate administration of the wife's property was the only change made by the 1944 amendment.
The Slater Case, supra, dealt with fruits of the wife's separate property received both before and after the 1944 amendment. The wife had been administering her separate property, either directly or through her husband as agent, but she failed in 1944 to execute the affidavit required by the 1944 amendment. Her acts of administration, though sufficient prior to August 1, 1944 to maintain the separate character of the fruits, were not sufficient thereafter to so maintain the fruits in her separate estate. Therefore, the court held:
"Accordingly, in the case at bar, defendants [the wife's heirs] are entitled under their reconventional demand to offset against any monies finally held to be due by them to plaintiffs [the husband's heirs] the total of all paraphernal funds of Mrs. Bynum deposited in her bank account between the periods December 24, 1940 until August 1, 1944, when all income thereafter derived from her paraphernal property fell into the community." 99 So.2d at p. 360. (Explanatory words in brackets supplied)
Thus, in spite of the broad language first hereinabove quoted, the court actually only ordered restitution of separate income received prior to August 1, 1944. After that date, however, she was not, as a matter of law, administering her separate property, because she had not complied with the requirement instituted by the amended Article 2386, and the fruits belonged to the community.
The right to restitution of fruits of the separate and paraphernal property is *557 contained in LSA-C.C. Art. 2391 which reads as follows:
"The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed." (Emphasis supplied)
The only provision "above expressed" for restitution of fruits is LSA-C.C. Art. 2388 which provides as follows:
"The husband, who administers the paraphernal property of his wife, notwithstanding her formal opposition, is accountable to her for all the fruits, as well as those existing as those which have been consumed." (Emphasis supplied)
There is no evidence in the present matter of any opposition from Mrs. Guilott, formal or otherwise, to the administration by her husband, and Art. 2388, therefore, is not applicable.[4]
Other articles of the Civil Code convince us that there is no absolute right to restitution of fruits. LSA-C.C. Art. 2396 provides that a wife who is separate in property and has left the enjoyment of her property to her husband, the husband is answerable for the fruits when demanded or at the dissolution of the marriage. Even this article, however, specifically states that: "He is not accountable for the fruits which have been previously consumed." It would appear inconsistent that in cases where the wife and husband are separate in property by marriage contract the husband would have to account only for existing fruits, yet in the event there is a community estate, he would have to account for all fruits received by the community in its entire existenceboth those existing and those consumed. Furthermore LSA-C.C. Art. 2407 provides:
"The fruits hanging by the roots on the lands belonging separately to either the husband or the wife, at the time of the dissolution of the marriage, are equally divided between the husband and the wife or their heirs. It is the same with respect to the young of cattle yet in gestation.
"The fruits of the paraphernal effects of which the wife reserved to herself the enjoyment, are excepted from the rule contained in this article."
A division of such fruits as provided in this article conflicts with the absolute restitution of all fruits claimed by plaintiffappellee.
LSA-C.C. Art. 2386 itself provides the most convincing argument against absolute restitution of fruits, both existing and consumed, for it states in the last sentence that
". . . the fruits and revenues which are existing at the dissolution of the marriage belong to the owner of the things which produce them."
If the wife were entitled to unlimited restitution, even of those fruits consumed, as plaintiff-appellee argues and as the trial court held, this sentence would be meaningless. There would be no point in this article providing for the ownership of fruits and revenues existing at the time of dissolution if the wife was entitled to full restitution anyway.
Finally, since the fruits of the wife's separate property administered by the husband fall into the community, such fruits become community property and to require restitution would, in effect, be requiring restitution of community property itself.
In Falconer v. Falconer, 167 La. 595, 120 So. 19 (1929) the court specifically recognized the community character of fruits of the wife's paraphernal property and denied a claim for restitution. In that case the wife had sued her husband to be restored *558 to the administration of her paraphernal property. Coupled with this demand was a claim on a quantum meruit basis for rents and revenues received by the community during the husband's administration. The appellate court held that the trial court should have rejected this demand outright, as the plain provisions of the Civil Code declare that,
". . . when the paraphernal property of the wife is administered by the husband, or by him and the wife indifferently, the fruits and profits belong to the community of acquets and gains. C.C. [Arts.] 2386 and 2402.
"The wife therefore could have no personal action against her husband for an account of such revenues and profits." 120 So. at p. 20.
This case was followed in Peters v. Norris, 191 La. 436, 185 So. 461 (1938) which only decreed restitution of the wife's capital delivered to her husband. See also Isaacson v. Mentz, 33 La.Ann. 595 (1881).
Our conclusion that the Civil Code articles themselves do not subject the fruits of the wife's paraphernal property to restitution at the dissolution of the marriage is bolstered by these cases. Restitution of fruits received by the community during the entire existence of the marriage would, in many cases, as it does in the present one, involve large sums going back over a number of years. It would be a perversion of the articles of the Civil Code clearly designating such fruits as community property, and bring about a result never intended when the codal article was first adopted to make "fruits" community property.[5] Such construction would herald a new concept into the civil lawthe restitution to the wife of community property itself. The articles of the civil code and the above cases decree a different result, and we reject the idea of absolute restitution.
In addition to the restitution of fruits of her separate property, the trial court granted restitution of the capital of plaintiff-appellee's paraphernal estate. Paraphernal capital allegedly consists of (1) direct donations received from her father, Robert Barber in 1961 and 1962 and used in the construction of the family home, (2) receipts from the sale of municipal or parochial bonds alleged to belong to her separate estate, and (3) principal received from the sale of her alleged separate stock in Barber Brothers Contracting Company, Inc. There is also the question of the charactercommunity or separateof two parochial bonds which have not matured or been sold. These are the bonds of Calcasieu Parish Cravity Drainage District No. 4 and the St. Bernard Parish School Bond No. 1.
As previously noted, at the commencement of the trial counsel entered into a stipulation regarding the commingling of funds which simply provides that all separate funds of the wife were commingled and converted to community assets. The doctrine of commingled funds was succinctly set forth in Paxton v. Bramlette, 228 So.2d 161 (La.App. 3rd Cir. 1969) [Writ refused 255 La. 241, 230 So.2d 92 (1970)] in the following statement:
"Our jurisprudence is established that when large sums of community funds *559 are commingled indiscriminately with separate funds, to the extent that the separate funds are no longer capable of identification, all of the commingled funds become community property. Succession of Land, 212 La. 103, 31 So.2d 609; Magnolia Petroleum Co. v. Crigler, 12 So.2d 511 (La.App.); Bruynickx v. Woodward, 217 La. 736, 47 So.2d 478; Slater v. Culpepper, 233 La. 1071, 99 So.2d 348.
"However, where the amount of community money is small in comparison with the separate funds with which it is commingled, the entire funds do not become community property. Odom v. Odom, 121 So.2d 8 (La.App.); Giamanco v. Giamanco, 131 So.2d 159 (La.App. 3rd Cir. 1961); Slater v. Culpepper, supra; Succession of Sonnier, 208 So.2d 562 (La.App.).
"There is also jurisprudence holding that the mere mixing of separate and community funds in the same account does not of itself convert the entire account into community property, where the separate funds can be traced with sufficient certainty to establish their identity. Betz v. Riviere, 211 La. 43, 29 So.2d 465; Graves v. United States Rubber Company, 237 La. 505, 111 So.2d 752."
228 So.2d at p. 165.
Thus it is only when the separate and commingled funds are significant in amount and are not traceable or identifiable that restitution is denied. The stipulation entered into by counsel is not specific on this essential point. One might interpret the stipulation to mean that separate funds were not traceable, thus cutting off restitution. On the other hand the stipulation might be interpreted to mean that the commingled funds were nevertheless identifiable, and still subject to restitution. We cannot determine from the record, however, what was intended by this brief and incomplete stipulation.
Furthermore, the stipulation was treated as an admission of delivery of the wife's paraphernal funds to the husband. Although delivery is a prerequisite for restitution of separate capital, Succession of Rieger, 37 La.Ann. 104 (1885); Peters v. Norris, supra; Succession of Smith, 232 So.2d 569 (La.App. 4th Cir. 1970); Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir. 1968); Gregory v. Gregory, 223 So.2d 238 (La.App. 3rd Cir. 1969); Gouaux v. Gouaux, 211 So.2d 97 (La.App. 1st Cir. 1968); Succession of Slavich, 232 So.2d 846 (La.App. 4th Cir. 1970), it is not clear that this was the effect intended by the parties in making this stipulation. Surely the husband, defendant-appellant, did not intend to make this admission, yet one interpretation could give the stipulation that effect.
The burden rested upon plaintiffappellee to establish the separate character of her funds and identify same. Bachino v. Martin, 35 La.Ann. 571 (1883); Ory Brothers v. Muller, 14 La.App. 35, 128 So. 903 (La.App.Orl. 1930); R.D.M. Corporation v. Patterson, 255 La. 301, 230 So.2d 820 (1870); Succession of Broussard, 306 So.2d 399 (La.App. 3rd Cir. 1975); Magnolia Petroleum Company v. Crigler, 12 So.2d 511 (La.App. 2nd Cir. 1942); LSA-C.C. Arts. 2334 and 2405. The manner in which this trial was conducted, and the speculation with regard to the meaning of the stipulation of counsel, makes it impossible to determine whether she has sustained that burden.
Even commingled and non-traceable paraphernal funds [capital] are subject to restitution under certain circumstances where the benefit to the community is established with reasonable certainty. See Denegre v. Denegre, 30 La.Ann. 274 (1878), Succession of Bell, 194 La. 274, 193 So. 645 (1940); Succession of Videau, 197 So.2d 655 (La.App. 4th Cir. 1967) [Writ Refused 250 La. 920, 199 So.2d 922 (1967) with the statement: "We find no error of law in the two assignments of error *560 presented for our consideration."] Succession of Russo, 246 So.2d 26 (La.App. 4th Cir. 1971) [Writ Refused 258 La. 760, 247 So.2d 861 (1971) with the statement: "The majority and concurring opinion correctly dispose of the issue presented by this application."] As so much reliance was placed by both parties upon the stipulation, we cannot determine from the record whether even the requirements of this line of cases have been satisfied.
It is obvious that the stipulation was the foundation of the whole trial, and caused both parties to omit presenting much essential evidence. The confusion may have resulted, in part, from a misinterpretation of Slater v. Culpepper, supra, but regardless of the cause, we find the record so incomplete that proper adjudication of the remaining issues is impossible. It would be grossly unfair to indulge in a guessing game as to the intent of the parties in order to determine what has or has not been proved when so much is lacking in the record. The record itself furnishes no clues for interpreting the action of the parties.
LSA-C.C.P. Art. 2164 provides that an appellate court may render any judgment which is just, legal and proper. Although the law favors prompt disposition of cases and the avoidance of protracted litigation, under this article an appellate court is empowered to remand a case for a new trial or for introduction of additional evidence to prevent a miscarriage of justice. Bidwell v. Binnings Construction Company, Inc., 228 So.2d 240 (La.App. 1st Cir. 1969). See also Herbert v. Travelers Indemnity Company, 255 La. 645, 232 So.2d 463 (1970).
We have minutely examined the merits of this case and find the inexactness of the record, the lack of clarity of the stipulation, and other errors to be of such magnitude that we are unable to pronounce judgment according to conscience and the requirements of justice. See Bruney v. Bruney, 230 La. 30, 87 So.2d 718 (1956); See also former Art. 906 of the Louisiana Code of Practice, the Official Revision Comments, Section (c) to LSA-C.C.P. Art. 2164; Savin v. Savin, 216 La. 71, 43 So.2d 221 (1959). The stipulation itself, which is subject to different interpretations, depending on the party relying on same, prevented the reception of evidence which this court needs to properly adjudicate the remaining issues. To prevent a miscarriage of justice, therefore, we feel constrained to remand for a new trial, and the confusing stipulation of counsel regarding commingled funds should be disregarded unless the parties can agree upon its exact meaning and effect.
For the foregoing reasons, this case is reversed insofar as it decrees the restitution of fruits of the separate property, and is remanded for a new trial, in accordance with the authorities herein cited, on all issues except the wife's right to restitution of fruits of her separate estate. Costs in the trial court and on this appeal to be assessed against the mass of the community.
Reversed in part and remanded.
DOMENGEAUX, J., concurs in part and dissents in part and assigns written reasons.
DOMENGEAUX, Judge (concurring in part and dissenting in part).
I concur in the result reached by the majority in remanding this case for the purpose of clarification of the issues of paraphernality, delivery, and traceability of the wife's property. I further agree that Mr. Guilott is not entitled to rental payments from his wife's occupancy of the family home.
However, I am compelled to disagree with the definitive pronouncement by my brothers of the majority concerning Mrs. Guilott's right to restitution for the fruits of her paraphernal property.
*561 I feel that the case of Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957) is controlling on the issue. As the majority has pointed out, Slater is itself fraught with contradictions. In that case the broad statement is made that:
"Under our law the wife, unlike the husband has the absolute right to restitution for her paraphernal effects and their fruits, either delivered to her husband or delivered for use to the community, save in instances governed by Article 2389 of the Civil Code, which is not applicable here." (Emphasis added.)
On the other hand Slater interprets the amendment to Civil Code Article 2386 in such a fashion so as to deny the wife's claim for restitution of her paraphernal fruits delivered to the community after the effective date (August 1, 1944) of the amendment to that codal provision. Obviously Slater has caused a great deal of confusion, and I feel that its language provides for alternate interpretations.
I believe that the purpose of the amendment to Civil Code Article 2386[1] was to provide a device by which the wife could prevent the fruits of her paraphernal property from ever falling into the community. I do not feel that a wife's failure to execute the required affidavit results in her loss of these fruits forever. I submit that absent an execution of the "2386 affidavit" the wife must prove the nature of her paraphernal funds and show that they were delivered to and used by the community. Thus the wife should not be denied the ultimate restitution for the fruits of her separate property employed by the community if the affidavit is lacking, but her burden becomes considerably greater.
Civil Code Article 2391 provides:
"Art. 2391. Wife's action for restitution of paraphernal effects
The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed."
This Article remains in its original form from the Code of 1825. The legislature failed to amend Article 2391 at the time it amended Article 2386 in 1944. I feel that the legislature clearly expressed its intent in choosing not to amend Article 2391, thus tacitly establishing the rationale upon which I base my interpretation. I am in disagreement with the cited Law Review Article in 31 La.L.Rev. 252 which states that Article 2391 is only applicable to restitution claimed by the wife during marriage. I believe that C.C. 2391 clearly establishes the principle that the wife possesses the right to restitution for the fruits of her paraphernal property upon dissolution of the community as well as during its existence.
It is my opinion that the issue presented by this appeal concerning the wife's right to restitution for the fruits of her paraphernal property involves an area of the law which is uncertain and in need of clarification. While I am cognizant of the logical and scholarly argument presented by the majority, I would suggest that this case presents an opportunity to our Supreme Court to consider the matter and rule definitively on the issue presented.
For the above and foregoing reasons I respectfully concur in part and dissent in part.
NOTES
[1] These distributions were made after the formation of the corporation hereinafter mentioned.
[2] Two bonds, namely the Iberia Parish School District No. 13 and State of Louisiana, State Bond and Building Commission, Series AA, in the total amount of $25,000 were cashed by Mrs. Guilott after May 1, 1972.
[3] This is the restitution figure given in the Reasons for Judgment. The trial court also ordered in the Reasons for Judgment restitution of $27.16 in taxes paid by Mrs. Guilott and $416.00 for house insurance premiums paid by Mrs. Guilott. In the judgment itself, however, these figures were combined ($461,061.99 + $27.16 + $416.00) and restitution of $461,506.15 ordered. There was a mistake in addition, however, as the total of these sums is $461,505.15.
[4] In a law review article appearing in 31 La.L.R. 252, Prof. Pascal at p. 254 states that Art. 2391 C.C. is to be applied only to restitution claimed by the wife during the marriage. It is not applicable to restitution claimed upon dissolution of the marriage.
[5] It should be noted that the early predecessors of LSA-C.C. Art. 2386Art. 60 of the Civil Code of 1808 and Art. 1578 of the Code Napoleon of 1804did not provide that fruits of the wife's paraphernal property became community property when administered by the husband, although the articles did provide for restitution of existint, fruits, excepting those which had been consumed from the obligation of restitution. In the Civil Code of 1825 a different concept of "fruits" was adopted, as Art. 2363 of that code [the parent of Art. 2386 of the Civil Code of 1870] provided for the first time that fruits of the wife's paraphernal property administered by the husband fell into the community. The accountability of both the marriage partners at the dissolution of the marriage for existing fruits was retained, just as it is in the present Art. 2386, but more importantly, specific provision was made designating "fruits" as community property.
[1] The text of C.C. Art. 2386 before and after the 1944 amendment is to be found in the body of the majority opinion.